UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDY M.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 3:20-cv-06121-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Andy M. seeks review of the denial of his application for Disability Insurance Benefits. He contends the ALJ erred by (1) failing to characterize plaintiff's past work as a composite job; (2) finding plaintiff could perform his past work despite an RFC that does not allow for the reasoning level required for that job; (3) misevaluating the medical evidence; and (4) misevaluating the lay witness evidence. Dkt. 17. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**DISCUSSION**

**A.     Plaintiff's past relevant work**

At step four of the five-step disability evaluation process, the ALJ must determine whether the claimant's RFC allows him to return to his past relevant work. *Lester v. Chater*, 81

F.3d 821, 828 n.5 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden of proving that he cannot perform his past relevant work either as actually performed or as generally performed in the national economy. *Stacy v. Colvin*, 825 F.3d 563, 569 (9th Cir. 2016). If the claimant is able to perform his past relevant work as actually or generally performed, the claimant is not disabled. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).

The ALJ found at step four that plaintiff was able to perform his past relevant work as a laborer, stores, DOT code 922.687-058, medium, unskilled, SVP 2, both as generally performed and as actually performed. Tr. 45. In so finding, the ALJ relied on the vocational expert's testimony that plaintiff's past work at an REI warehouse met the DOT description of this job and that an individual with plaintiff's vocational factors and RFC could perform this work. *Id.*

1. *Composite job*

Plaintiff argues the ALJ erred by failing to characterize his past work at REI as a composite job. Dkt. 17 at 5. The Commissioner responds that plaintiff testified he performed two different, separate jobs during his time at REI, and that plaintiff's arguments about composite jobs therefore do not apply to this situation. Dkt. 18 at 3.

Composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. SSR 82-61. These situations must be evaluated according to the particular facts of each individual case. *Id.* For these reasons, the ALJ considers only whether a claimant can perform a composite job as the claimant actually performed it. *Barbra A. v. Saul*, 6:19-CV-01206-SB, 2020 WL 6820798, at *3 (D. Or. Nov. 20, 2020). In addition, the ALJ may not classify a job according to its least demanding function in order to find the claimant can perform his past relevant work. *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985).

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 2

Plaintiff testified he worked at the REI warehouse for about a year. Tr. 83. For the first seven months, he scanned barcodes on boxes as they passed by on a ramp and took the boxes where they were supposed to go. Tr. 84. For the remainder of his time at REI, he unpacked bicycles, removed certain parts from them, took them to a room where mechanics performed work on them, and then reassembled and repackaged the bicycles. Tr. 111-12. The VE classified plaintiff's job at REI as laborer, stores, DOT code 922.687-058, medium, unskilled, SVP 2. Tr. 85. The VE stated that this job title "would include all of the above" work described by plaintiff, including a brief description of his work with bicycles. Tr. 85. Plaintiff more thoroughly described his work with bicycles later in the hearing, but the VE did not specifically address this component of plaintiff's work. Tr. 111-12.

Plaintiff argues his work at REI consisted of the job of laborer, stores, and the job of bicycle repairer, DOT code 639-681.010, medium, semi-skilled, SVP 4. Dkt. 17 at 6-7. To support this argument, plaintiff has submitted a declaration from a VE opining that plaintiff's job at REI was a composite job consisting of these two jobs. Tr. 13-14. Plaintiff asserts that because the bicycle repairer job is semi-skilled and the RFC finding does not allow for semi-skilled work, he was unable to perform his past relevant work as he actually performed it, the only relevant consideration for a composite job. Dkt. 17 at 8-9. He further asserts the ALJ "signaled he did not like composite jobs" when the ALJ stated he would find plaintiff's other past work as an environmental technician to be one job after plaintiff testified that he spent only about 10% of his time supervising others, and the VE "got the message" that the ALJ would not accept a composite job. *Id.*

Although the claimant bears the burden of proof at step four, the ALJ still has a duty to make the requisite findings of fact to support the step-four finding. *Pinto*, 249 F.3d at 844.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 3

Where the ALJ fails to make sufficient findings to ensure the claimant really can perform his past relevant work, either as actually performed or as generally performed, the reviewing court cannot determine whether the finding is supported by substantial evidence. *Id.*

Here, plaintiff's testimony introduced evidence that while working at REI, he performed duties outside the scope of the job of laborer, stores. The DOT description of the laborer, stores job includes handling, sorting, and moving goods and materials within a warehouse setting. Tr. 24. Plaintiff testified that in addition to that type of work, he also performed unpackaging, disassembling, reassembling, and repackaging of bicycles. Tr. 111-12. The ALJ accepted the VE's testimony that plaintiff's job met the DOT description of laborer, stores without making any findings, either in the decision or at the hearing, as to the how plaintiff actually performed the work. The ALJ failed to address whether plaintiff's job could be considered laborer, stores with the bicycle-related tasks included, whether the bicycle-related tasks made plaintiff's job a composite job, or whether plaintiff performed two different, separate jobs over the course of his time at REI. And if the ALJ considered plaintiff's work at REI to be two separate jobs, the ALJ made no findings regarding the bicycle-related job.

Although plaintiff has submitted a VE opinion that his work at REI was a composite job that included the job of bicycle repairer, this Court cannot make findings of fact to determine in the first instance whether plaintiff actually performed the duties of that job. Similarly, although the Commissioner's proposed interpretation of plaintiff's testimony—that plaintiff first performed the laborer, stores job, and then performed the bicycle-related job—is plausible, this Court cannot make that finding of fact in the first instance. Simply put, this is a case that "vividly demonstrates the difficulty for the reviewing court where sufficient findings are not made." *Pinto*, 249 F.3d at 845. Accordingly, remand is necessary to address the nature of plaintiff's

work at REI, whether it was a composite job, two separate jobs, or even simply the job of laborer, stores, and the effect on the step-four analysis based on the outcome of this assessment.

    2.    *Reasoning level*

Plaintiff argues the ALJ erred by finding he could perform his past relevant work of laborer, stores because that job requires detailed work whereas the RFC finding does not allow for detailed work. Dkt. 17 at 9.

The job of laborer, stores, requires the ability to perform work at reasoning level 2. Tr. 25. Reasoning level 2 requires the ability to apply common sense understanding, to carry out "detailed but uninvolved" instructions, and to deal with problems involving a few concrete variables in or from standardized situations. *Id.*

The ALJ found that plaintiff had the RFC to understand, remember, and apply short, simple instructions and to perform routine, repetitive tasks, in work that is not in a fast paced, production-type environment, involves no more than simple decisions, and involves no more than occasional exposure to workplace changes. Tr. 37. The VE testified that a person with these limitations could perform plaintiff's past work as a laborer, stores. Tr. 86, 117-18.

When asked whether a job with reasoning level 2 requires a person to perform detailed tasks, the VE responded: "No. It's more—well, yeah, carry out detailed but uninvolved oral instructions." Tr. 120. He testified that the requirements "detailed but uninvolved" were at odds with each other and not well-defined, so he relied on common sense and what he knows about the job description and how the job is performed. Tr. 120-21. He further testified that "detailed but uninvolved" did not mean detailed work but mainly referred to the instructions required for the work; the work itself is unskilled work, typically requiring not overly detailed instructions. Tr. 121-22. He acknowledged that his testimony differed from the DOT, stating that when an

individual is limited to simple, uninvolved work, he directs them toward unskilled, routine, repetitive jobs, which is what the job of laborer, stores is. Tr. 123.

Plaintiff argues that the VE appeared to conflate the specific vocational preparation (SVP) rating of 2 for the laborer, stores job with the reasoning level of 2 required for the job,[1] and struggled to answer the question of whether the limitations in the RFC would allow an individual to perform a job with a reasoning level of 2 that required detailed work. Dkt. 17 at 9-10. He argues that he is more appropriately limited to jobs with reasoning level 1 that require only one- to two-step tasks. *Id.* at 10. The Commissioner responds that being limited to simple, routine tasks is not inconsistent with reasoning level 2 work. Dkt. 18 at 3-4.

Although plaintiff frames his argument in terms of his ability to perform detailed tasks, the definition of reasoning level 2 and the VE's testimony make clear that the phrase "detailed but uninvolved" refers to the instructions required to carry out the tasks, not the tasks themselves. However, the RFC limits plaintiff to short, simple instructions. The VE testified that this limitation is compatible with reasoning level 2 work. The VE also testified that this testimony was inconsistent with the DOT. Despite this testimony, the ALJ found that the VE's testimony was consistent with the DOT and did not make any findings regarding this inconsistency. Tr. 45.

Under SSR 00-4p, an ALJ has an affirmative responsibility to inquire as to whether a vocational expert's testimony is consistent with the DOT and, if there is a conflict, determine whether the vocational expert's explanation for the conflict is reasonable. *See Massachi v. Astrue*, 486 F.3d 1149, 1152-54 (9th Cir. 2007). SSR 00-4p also requires the ALJ to explain in

---

[1] The SVP rating describes how long it takes a typical worker to learn the job, with a job rated at SVP 2 requiring 30 days or less to learn. Tr. 25.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 6

the decision how he or she resolved the conflict. An error in following the procedural requirements of SSR 00-4p may be harmless if the vocational expert provided sufficient support for her conclusion so as to justify any conflicts. *Massachi*, 486 F.3d at 1154 n.19.

The ALJ failed to follow the procedural requirements of SSR 00-4p by finding that the VE's testimony was consistent with the DOT despite the VE's testimony that it was not. Because this case must be remanded for further administrative proceedings at step four, the Court need not decide whether this error was harmless. Instead, on remand, the ALJ shall reevaluate whether an individual with plaintiff's RFC can perform his past work, including whether he can perform work that requires reasoning level 2, and shall explain how he resolved any conflicts with the DOT.

    **B.**    **Medical opinions**

Plaintiff argues the ALJ erred by rejecting the opinions of psychologist Raymond Parker, Ph.D., and speech therapist Sarah Herron, MACC-SLP,[2] in favor of the opinions of the state agency reviewing doctors. Dkt. 17 at 11.

When considering medical opinions (for applications filed on or after March 27, 2017), the ALJ considers the persuasiveness of the medical opinion using five factors (supportability, consistency, relationship with claimant, specialization, and other), but supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2), (c) (2017). The ALJ must explain in her decision how she considered the factors of supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (2017). The ALJ is not

---

[2] Plaintiff also challenges the ALJ's assessment of the opinion of treating doctor Tania Posa, M.D., in the reply brief. Dkt. 21 at 7. Issues raised for the first time in the reply brief are deemed waived. *Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996); *Center for Sierra Nevada Conservation v. U.S. Forest Service*, 832 F.Supp.2d 1138, 1164, n. 4 (9th Cir. 2011). The Court declines to address the ALJ's assessment of this opinion.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 7

required to explain how she considered the other factors, unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). The new regulations eliminate the agency's "treating source rule," which gave special deference to treating doctors' opinions. 82 Fed. Reg. at 5853

Dr. Parker, who began treating plaintiff in January 2017, completed a functional assessment in August 2017 in which he opined that plaintiff would have limitations in various areas of understanding, memory, sustained concentration, social interaction, and adaptation; he would be off task or unable to work more than 30% of the time; and he would be unable to obtain and retain work in a competitive work setting for at least six months. Tr. 1263-66.

The ALJ found Dr. Parker's opinion that plaintiff would be unable to obtain and retain competitive work to be conclusory and pertaining to an issue reserved to the Commissioner and therefore unpersuasive. Tr. 43. The ALJ found the limitations Dr. Parker assessed were largely consistent with the RFC finding, as Dr. Parker assessed limitations in areas that exceed the RFC, such as performing tasks with detailed instructions. Tr. 43. And the ALJ found the remaining limitations Dr. Parker assessed to be unpersuasive, as they were unsupported in the record and inconsistent with the assessments in which Dr. Parker found only a mild cognitive impairment. Tr. 44. The ALJ noted that Dr. Parker stated he was not evaluating plaintiff's functioning as pertains to his depressive and anxiety symptoms. *Id.* And the ALJ noted that Dr. Parker relied on plaintiff's self-reports about his functioning at home, which the ALJ found were not instructive given Ms. Herron's observation that plaintiff likely perceived greater effect on his functioning from his cognitive impairment given his above-average premorbid functioning. *Id.* Finally, the ALJ found that Dr. Parker gave no explanation for his opinion that plaintiff would be off task

more than 30% of the day, and that this opinion was unsupported by and inconsistent with the record. *Id.*

Ms. Herron completed a cognitive evaluation in August 2017 and opined that plaintiff would be off task or unable to work more than 30% of the time, he would be absent from work or unable to complete an 8-hour workday due to his impairments more than 30% of the time, and he would be unable to obtain and retain work in a competitive setting for at least six months. Tr. 1249-52.

The ALJ found that while Ms. Herron stated in her opinion that she had found "moderate to severe deficits" related to memory, attention, and language skills in an assessment she performed earlier that month, the only severe deficit she reported in that assessment was based solely on plaintiff's report about his functioning in the home. Tr. 43. The ALJ noted that plaintiff's scores on formal testing during that evaluation were within the average range for attention and for his total score. *Id.* The ALJ concluded that Ms. Herron's opinions were not consistent with that report or with earlier neuropsychological testing she also cited and were not supported by the record as a whole; the ALJ therefore found them unpersuasive. *Id.*

The state agency reviewing doctors opined that plaintiff was moderately limited in his ability to understand, remember, and carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, although they believed he would be able to complete a normal workday and workweek with normal breaks. Tr. 135-36, 147-48. They assessed no social interaction or adaptation limitations. *Id.*

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 9

The ALJ found the state agency doctors' opinions fairly persuasive because they discussed the relevant objective medical evidence and pointed out inconsistencies between that evidence and plaintiff's subjective allegations regarding his functioning. Tr. 42-43. The ALJ therefore found the prior administrative findings persuasive, but, taking into account plaintiff's testimony, found it reasonable to add limitations to work that is not fast paced and that involves no more than simple decisions and occasional workplace changes. Tr. 43.

Plaintiff argues that the ALJ erred by accepting the opinions of the state agency reviewing doctors over the opinions of the treating sources because the reviewing doctors had available for review only the medical records in Exhibits 1F through 3F, whereas the record now contains six exhibits, 1F through 6F, in the medical record section. Dkt. 17 at 13. The Commissioner responds that while these doctors were not able to review the entire record, the ALJ was, and the ALJ reasonably found that these opinions were consistent with the longitudinal record. Dkt. 18 at 6. The ALJ also points out that plaintiff does not challenge the ALJ's reasons for finding Dr. Parker's and Ms. Herron's opinions unpersuasive. *Id.*

The Court agrees with the Commissioner on both points. The ALJ evaluated the supportability and consistency of the reviewing doctors' opinions in light of the entire record, not only in light of the records the doctors reviewed. The ALJ found that these opinions were consistent with and supported by the record and were therefore fairly persuasive. And the ALJ recognized that in light of evidence these doctors did not evaluate—specifically, plaintiff's hearing testimony—additional restrictions beyond those the doctors opined were reasonable. The ALJ was not required to discount these opinions because the doctors reviewed only a portion of the record where the ALJ found the opinions supported by and consistent with the record as a whole. Moreover, even if the Court were to find the ALJ's assessment of these opinions to be

unreasonable, it does not follow that the ALJ would be required to find Dr. Parker's and Ms. Herron's opinions persuasive. There is no longer any special deference due to treating sources, and plaintiff has not identified, nor has the Court ascertained, any error in the ALJ's assessment of these opinions. The ALJ did not err by relying on the reviewing doctors' opinions he found to be persuasive and discounting the treating doctors' opinions he found unpersuasive.

### C. Lay witness statements

Plaintiff argues that the ALJ erred in rejecting the lay witness statements from his wife, Lisa M., his neighbors, Tommy and Marjorie H., and his sister-in-law, Karin C. Dkt. 17 at 13-15. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific reasons germane to the witness for doing so. *See Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006).

The lay witnesses submitted statements in which they describe plaintiff's cognitive decline and social withdrawal, including problems with memory, concentration, following directions, and socializing. Tr. 230-37, 305-07, 310, 313, 319. The ALJ found that these statements did not support greater limitations than those in the RFC finding. Tr. 44. The ALJ found that each of the statements was consistent with the record in showing that plaintiff experienced significant cognitive decline, which was reflected in the RFC. *Id.* The ALJ also noted that the statements showed that plaintiff was not as outgoing socially as he was formerly, and while the ALJ did not cast doubt on those statements, he found that they did not allege an inability to get along others but rather a disinclination to seek out social activities. *Id.* The ALJ found that, as treating and evaluating clinicians consistently described plaintiff as pleasant, cooperative, and/or friendly, there was insufficient evidence that plaintiff would be unable to

interact appropriately and effectively with supervisors, co-workers, and the public in the workplace. *Id.*

Plaintiff argues that there is no evidence in this case to challenge the credibility of these witnesses. Dkt. 17 at 14. He argues that clinicians' descriptions of plaintiff as pleasant, cooperative, and/or friendly are based on his presentation in a medical setting, which is not his usual and customary environment, and where plaintiff is able to "put on a façade for a short period of time." *Id.* at 15. He argues that what his family and friends observe on an ongoing basis is more telling, and that just because a brain condition is labelled as mild does not mean that it does not have a significant impact on functioning. *Id.*

The ALJ did not discount the witnesses' credibility or dispute their characterization of plaintiff's functioning. Instead, the ALJ considered the limitations they described and found that they did not exceed those included in the RFC. For example, plaintiff's wife wrote that plaintiff needs detailed lists and daily reminders to accomplish tasks around the house. Tr. 306. She described plaintiff's attempt to work as a bus driver, which failed because he was unable to learn the job fast enough and could not make good driving decisions during his training period. *Id.* She stated that he no longer socialized with friends and isolated himself during family functions. *Id.* And she stated that plaintiff often does not know how to proceed when the routine changes. Tr. 236. The ALJ could reasonably find that these statements reflect plaintiff's inability to perform work that exceeds the limitations of the RFC finding, such as working as a bus driver, or demonstrate his need for limitations that are included in the RFC, such as a limitation to routine, repetitive tasks and no more than occasional exposure to workplace changes. The ALJ did not improperly reject the lay witness statements and reasonably interpreted them as consistent with

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 12

the RFC finding. Although plaintiff has proposed an alternative interpretation of this evidence, the Court may not rely on that alternative to disturb the ALJ's assessment of the evidence.

Similarly, plaintiff's assertion that the ALJ should not have relied on clinicians' observations about plaintiff's ability to interact with others is also misplaced. The ALJ did not discount the lay witnesses' descriptions of plaintiff's social withdrawal. Instead, the ALJ found that these statements reflected plaintiff's reluctance to socialize in informal and/or family settings, not an inability to get along with others. The ALJ reasonably relied on the observations of medical professionals in clinical settings to find that the evidence did not support a limitation on social interaction in a work setting.

The ALJ did not improperly discount the lay witness statements and reasonably found them to be consistent with the RFC finding. Accordingly, the Court may not disturb the ALJ's assessment of these statements.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall redo step four of the five-step disability evaluation process, including reevaluating the nature of plaintiff's past work at REI and his ability to perform that work given his RFC. The ALJ shall further develop the record and redo the remainder of the five-step disability evaluation process and the ALJ deems necessary and appropriate to make a new decision.

DATED this 3rd day of September, 2021.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge